Middleton, J.
The defendant argues and the Court of Appeals held that section 1089-1 of the city ordinances is in conflict with the following provision of Section 13064, General Code, which became effective September 21, 1943:
*211 “Whoever, for his own profit, establishes, opens, sets on foot, carries on, promotes, makes, draws or acts as ‘backer’ or ‘vendor’ for or on account of a lottery or scheme of chance, by whatever name, style, or title denominated or known, whether located or to be drawn, paid or carried on within or without this state, or by any of such means, sells or exposes for sale anything of value, shall be fined not less than fifty dollars nor more than five hundred dollars and imprisoned not less than ten days nor more than six months. ’ ’
All parties agree that in deciding the issues of this case consideration must be given to Section 6, Article XV of the Ohio Constitution, which provides:
“Lotteries, and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this state.”
It is the position of the defendant that this provision of the Constitution must be implemented by legislation, which the General Assembly accomplished by the enactment of Section 13064, General Code; that the city council of Columbus has no power to enact any ordinance conflicting with the statute; and that the ordinance in question does so conflict. It is urged by the defendant that the statute above quoted prescribes a penalty with respect only to carrying on the specified gambling transactions “for his own profit,” and, therefore, that the doing of the same acts not “for his own profit” removes her from the operation of the statute. This position, coupled with the claimed lack of power in the council to legislate in any way contrary to or differing from the enactment of the General Assembly, leads the defendant to the conclusion that the affidavit in the instant case is fatally defective in that it does not charge that the acts done were for the defendant’s own profit.
It is the opinion of this court that the theory fol *212 lowed by the defendant is untenable, and that tbe decision of tbe Court of Appeals was erroneous.
It may be conceded that Section 6, Article XV of the Ohio Constitution, above quoted, is not self-executing to the extent that it prescribes no penalty for violation thereof. However, to the extent that it is a declarative limitation upon the plenary legislative power of the Ohio General Assembly with respect to lotteries and the sale of lottery tickets, it is self-executing. See 1 Cooley on Constitutional Limitations (8 Ed.), 170. The Ohio General Assembly has no authority to legalize, either directly or indirectly, lotteries in any form. Prescribing a specific penalty for the operation of gambling transactions for one’s own profit does not by indirection legalize the same transactions if carried on not for profit. The defendant, therefore, can find no justification for the carrying on of gambling transactions under or by reason of the provisions of Section 13064, General Code.
Is the ordinance in question valid? Manifestly, the ordinance does not undertake to legalize anything made illegal by the quoted statute. The ordinance merely goes further than the statute in prescribing a penalty for engaging in gambling transactions not covered by the statute. The ordinance is not inconsistent with the statute.
In 1912, Article XVIII of the Ohio Constitution was adopted. It is commonly referred to as the Home-Rule Amendment. The following two sections of that article are particularly pertinent:
Section 3. “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
Section 7. “Any municipality may frame and adopt *213 or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.”
On May 14,1914, the city of Columbus adopted a city charter. Pertinent portions of that charter are as follows:
“Sec. 1. * * * It shall have all powers that now are, or hereafter may be granted to municipalities by the Constitution or laws of Ohio; and all such powers whether expressed or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council. In the absence of such provision as to any power, such power shall be exercised in the manner now or hereafter prescribed by the general laws of the state applicable to municipalities.”
“Sec. 2. The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof the city shall have, and may exercise all other powers which, under the Constitution and laws of Ohio, it would be competent for this charter specifically to enumerate.”
“Sec. 232. General laws to apply. All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, or with ordinances or resolutions hereafter enacted by the city council, shall be applicable to this city; provided, however, that nothing contained in this charter shall be construed as limiting the power of the city council to enact any ordinance or resolution not in conflict with the Constitution of the state or with the express provisions of this charter.”
*214 The question of the extent of the police power so vested in cities has been before this court on several occasions.
In the case of Greenburg v. City of Cleveland, 98 Ohio St., 282, 120 N. E., 829, the question was raised whether the city of Cleveland had the authority to enact an ordinance making attempted pocket-picking an offense. It was contended by the defendant that the city of Cleveland had no authority to pass that ordinance because the prohibition of crimes and offenses lies within the dominion of police power which power is the exclusive prerogative of the state. In rejecting the contention of the defendant, this court held that Section 3 of Article XVIII of the Constituion specifically authorizes municipalities “to adopt and enforce within their limits, such local police * * # regulations, as are not in conflict with the general laws,” and that the ordinance in question not being in conflict with the general laws of the state was a valid and constitutional exercise of local police power conferred upon municipalities by the Constitution.
In the case of Village of Struthers v. Sokol, 108 Ohio St., 263, 140 N. E., 519, this court stated the law as follows:
“1. Municipalities in Ohio are authorized to adopt local police, sanitary and other similar regulations by virtue of Section 3, Article XVIII, of the Ohio Constitution, and derive no authority from, and are subject to no limitations of, the General Assembly, except that such ordinances shall not be in conflict with general laws.
“2. In determining whether an ordinance is in ‘conflict’ with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.
“3. A police ordinance is not in conflict with a general law upon the same subject merely because certain *215 specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law, or because certain specific acts are omitted in the ordinance but referred to in the general law, or because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance.”
Without multiplying authorities or extending the discussion, it is the holding of this court that in adopting the ordinance in question the city of Columbus was exercising the police power vested in it by the Constitution ; that the ordinance does not conflict with the statute in question; and, therefore, that the ordinance is valid and enforceable. This is consistent with the views previously expressed by this court in the cases of Kraus v. City of Cleveland, 155 Ohio St., 98, and State v. Langman, 156 Ohio St., 400.
The judgment of the Court of Appeals is reversed, and the judgment of the Municipal Court is affirmed.

Judgment reversed.

Weygandt, C. J., Taet, Hart, Zimmerman and Stewart, JJ., concur.